**United States District Court**
For the Northern District of California

1

2

3          UNITED STATES DISTRICT COURT

4          NORTHERN DISTRICT OF CALIFORNIA

5

6

7   DAVID P. GARCIA,

8              Plaintiff,                    No. C 14-3543 PJH

9       v.                                   **ORDER GRANTING MOTION
                                             TO DISMISS; ORDER DENYING**
10   PNC MORTGAGE,                           **MOTION TO STRIKE; ORDER
                                             DENYING MOTION FOR PRELIMINARY**
11             Defendant.                    **INJUNCTION**
   _____/

12

13          Defendant's motion for an order dismissing the first amended complaint ("FAC") for

14   failure to state a claim, or in the alternative, striking certain allegations in the FAC, and

15   plaintiff's motion for a preliminary injunction, came on for hearing before this court on

16   January 28, 2015.  Plaintiff appeared by his counsel Marie G. Quashnock, and defendant

17   appeared by its counsel Marcus T. Brown.  Having read the parties' papers and carefully

18   considered their arguments and the relevant legal authority, the court hereby GRANTS the

19   motion to dismiss and DENIES the motion for preliminary injunction.

20                                **BACKGROUND**

21          In June 2006, plaintiff David P. Garcia purchased real property located in Pleasant

22   Hill, California.  FAC ¶ 31.  He obtained a loan from the predecessor of defendant PNC

23   Mortgage ("PNC") which was secured by a promissory note and deed of trust, recorded on

24   June 22, 2006.  Id.  In September 2011, plaintiff defaulted on the loan.  FAC ¶ 36.  In April

25   2012, he filed for bankruptcy protection for himself and his business.  FAC ¶ 38.  His

26   bankruptcy was discharged on July 16, 2012.  Id.

27          Plaintiff subsequently initiated loan modification negotiations with PNC.  FAC ¶ 39.

28   He authorized his wife, Susie Garcia (not a borrower on the loan) to act in his stead in the

United States District Court
For the Northern District of California

1    discussions with PNC.  Id.  Plaintiff alleges that he submitted a "complete" application for a

2    loan modification on August 13, 2012 ("the first application"), but that over the next few

3    months, PNC repeatedly requested additional information and documents.  FAC ¶ 42.  He

4    asserts that "in or around January 2013," he was told by a PNC representative that he

5    needed to submit a new loan modification application because a new calendar year had

6    begun.  FAC ¶ 43.

7            On February 20, 2013, before plaintiff submitted the new application, PNC recorded

8    a Notice of Default ("NOD") on the property, showing $46,825.43 owing as of February 18,

9    2013.  FAC ¶ 44.  Attached to the NOD was a Declaration of Mortgage Servicer dated

10   January 25, 2013, stating that the servicer had "tried with due diligence to contact the

11   borrower as required by California Civil Code § 2923.55(f)," but had not made contact

12   despite such due diligence.  Id.

13           Plaintiff alleges that on April 10, 2013, he submitted a new "complete" loan

14   modification application to PNC ("the second application"), but that PNC made repeated

15   requests for additional information over the period from April to August 2013.  FAC ¶¶ 45-

16   50.  He also asserts that Mrs. Garcia continued to get a different representative each time

17   she contacted PNC in response to the requests for information or documents, and that

18   those representatives were not always able to respond adequately to her requests for a

19   "status update on [p]laintiff's application" (apparently referring to the April 10, 2013

20   application).  FAC ¶ 45.

21           On August 9, 2013, while the April 10, 2013 loan modification application was

22   pending, PNC recorded a Notice of Rescission of the February 20, 2013 NOD; a

23   Substitution of Trustee, substituting Cal-Western Reconveyance as Trustee in place of the

24   former trustee; and an NOD showing $59,587.88 owing as of August 6, 2013.  FAC ¶ 51.

25   This NOD was accompanied by a copy of the same Declaration of Mortgage Servicer dated

26   January 25, 2013, which had previously been attached to the February 20, 2013 NOD.

27   FAC ¶ 52.  Plaintiff alleges that this declaration was void, because the February 20, 2013

28   NOD had been rescinded, and was also false, because he was in active loan modification

United States District Court

For the Northern District of California

1    review and PNC was actively soliciting documents from him.  Id.

2        It is not clear from the FAC what plaintiff claims happened with the April 20, 2013

3    loan modification application.  Plaintiff alleges only that on October 5, 2013, at PNC's

4    request, he submitted a new "complete" application for a loan modification ("the third

5    application").  FAC ¶ 54.

6        On November 11, 2013, Mrs. Garcia spoke with "Chris," in PNC's Loss Mitigation

7    Department, who allegedly told her that PNC had closed the October 5, 2013 application

8    the same day it was submitted.  FAC ¶ 55.  Plaintiff asserts that "Chris" offered no

9    explanation as to why the file had been closed on October 5, 2013, or why PNC had not

10   acknowledged receipt of the application sent in on that date, although "Chris" did allegedly

11   say that the financial information plaintiff had previously submitted had expired, and that

12   plaintiff would have to file another loan modification application.  Id.  When Mrs. Garcia

13   asked whether plaintiff should obtain legal representation at that time, "Chris" allegedly

14   responded that no foreclosure sale had been scheduled, so plaintiff "still had time."  Id.

15       At the end of January 2014, Mrs. Garcia contacted PNC to discuss which

16   documents would be needed to submit a new loan modification application.  FAC ¶ 57.

17   On February 4, 2014, she spoke to "Anna," who stated there was no foreclosure sale

18   scheduled on the property, and provided a long list of the required documents.  Id.

19   However, plaintiff asserts, "Anna" never informed Mrs. Garcia that PNC required that a

20   completed loan application be received at least 15 business days prior to any foreclosure

21   sale date.  Id.

22       Plaintiff alleges that on March 7, 2014, he faxed a new "complete" loan modification

23   application ("the fourth application") to PNC, along with all the requested supporting

24   documents.  FAC ¶ 59.  At that point, plaintiff was unaware that a Notice of Trustee Sale

25   had been recorded on March 3, 2014, and a copy mailed on March 4, 2014.  FAC ¶ 60.

26   Plaintiff received the Notice of Trustee Sale "on or about" March 11, 2014.  Id.  The Notice

27   set the sale for March 27, 2014.  Id.

28       On March 20, 2014, Mrs. Garcia called PNC to ask why plaintiff had received a

United States District Court

For the Northern District of California

1  Notice of Trustee Sale when he had just faxed a fourth application for a loan modification.

2  FAC ¶ 61.  This time she spoke to "Crystal," who explained that PNC needed to receive the

3  completed application 15 business days in advance of the Trustee sale, or the sale could

4  not be stopped.  Id.  Plaintiff alleges that this was the first time PNC had disclosed this

5  internal deadline to him.  Id.

6       On March 22, 2014, plaintiff received a letter from PNC acknowledging receipt of the

7  fourth application and supporting documents, which had been faxed on March 7, 2014.

8  FAC ¶ 62.  The letter was dated Friday, March 14, 2014, but was not mailed until Tuesday,

9  March 18, 2014.  Id.  In the letter, PNC stated that the fourth application could not be

10  reviewed "because the complete application was not received within the required

11  timeframe before [the] foreclosure sale date or you are otherwise ineligible for review."  Id.

12  & Exh. H.

13       Plaintiff filed the present action in Contra Costa Superior Court on March 24, 2014.

14  The court granted plaintiff's application for a temporary restraining order on March 25,

15  2014.  PNC subsequently postponed the date of the foreclosure sale to May 1, 2014.  FAC

16  ¶¶ 64-65 & Exh. I.  On April 24, 2014, the court granted plaintiff's motion for preliminary

17  injunction.  PNC had not been properly served as of that date, and did not oppose the

18  motion.

19       On April 29, 2014, plaintiff sent a qualified written request ("QWR") to PNC pursuant

20  to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, in an attempt

21  to gather additional information about his loan.  FAC ¶ 67 & Exh. J.  PNC provided an initial

22  response on May 9, 2014, and a further response on June 12, 2014, but did not provide

23  copies of all the documents plaintiff had requested.  Id. & Exh. K.

24       PNC removed the case to this court on August 6, 2014, and on November 9, 2014,

25  plaintiff filed the FAC, asserting seven causes of action – (1) violation of California Civil

26  Code § 2923.5; (2) violation of various provisions of the California Homeowner's Bill of

27  Rights ("HBOR"), Cal. Civ. Code §§ 2923.7, 2923.55, 2924.10, and 2923.6 and/or 2924.11;

28  (3) violation of RESPA; (4) violation of California Business & Professions Code

4

United States District Court

For the Northern District of California

1  § 17200; (5) quiet title; (6) negligence; and (7) declaratory judgment.  On November 20,

2  2014, the parties filed a stipulation agreeing that the state court's preliminary injunction

3  would be dissolved; that plaintiff would file another motion for preliminary injunction in this

4  court; and that PNC would cause any scheduled trustee's sale of the property to be

5  postponed until after the hearing of the new motion to be filed by plaintiff.

6      PNC now seeks an order dismissing the FAC for failure to state a claim, and/or

7  striking certain allegations in the complaint.  Plaintiff seeks a preliminary injunction barring

8  PNC from selling the property until after the present dispute is resolved.

9                                    **DISCUSSION**

10  A.    Motion to Dismiss

11      1.    Legal Standard

12      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

13  sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191,

14  1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint.  Allarcom

15  Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  A

16  complaint generally must satisfy only the minimal notice pleading requirements of Federal

17  Rule of Civil Procedure 8, which requires that a complaint include a "short and plain

18  statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

19      A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

20  plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

21  a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  While

22  the court is to accept as true all the factual allegations in the complaint, legally conclusory

23  statements, not supported by actual factual allegations, need not be accepted.  Ashcroft v.

24  Iqbal, 556 U.S. 662, 678-79 (2009); see also In re Gilead Scis. Sec. Litig., 536 F.3d 1049,

25  1055 (9th Cir. 2008).

26      The allegations in the complaint "must be enough to raise a right to relief above the

27  speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and

28  quotations omitted).  A motion to dismiss should be granted if the complaint does not

United States District Court

For the Northern District of California

proffer enough facts to state a claim for relief that is plausible on its face.  See id. at

558-59.  A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. at 679.  In the

event dismissal is warranted, it is generally without prejudice, unless it is clear the

complaint cannot be saved by any amendment.  See Sparling v. Daou, 411 F.3d 1006,

1013 (9th Cir. 2005).

Although the court generally may not consider material outside the pleadings when

resolving a motion to dismiss for failure to state a claim, the court may consider matters

that are properly the subject of judicial notice.  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th

Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  Additionally,

the court may consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v.

Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), as well as documents

referenced extensively in the complaint and documents that form the basis of a the

plaintiff's claims.  See No. 84 Employer-Teamster Jt. Counsel Pension Tr. Fund v. America

West Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

    2.    Defendant's Motion

PNC seeks an order dismissing all causes of action asserted in the FAC, for failure

to state a claim.

        a.    First cause of action (Civil Code § 2923.5)

In the first cause of action, plaintiff alleges that PNC violated Civil Code § 2923.5 by

filing a declaration that falsely stated that PNC had tried but was unable to contact plaintiff

in person or by telephone, at least 30 days before filing the NOD, to explore options for

avoiding foreclosure.  FAC ¶ 73-76.

Civil Code § 2923.5 provides that "a mortgagee, trustee, beneficiary, or authorized

agent may not file a notice of default . . . until 30 days after initial contact is made as

United States District Court

For the Northern District of California

1   required by [subsection (a)(2)] or 30 days after satisfying the due diligence requirements as

2   described in subdivision (e)."  Cal. Civ. Code § 2923.5(a)(1).  The authorized agent must

3   "contact the borrower in person or by telephone in order to assess the borrower's financial

4   situation and explore options for the borrower to avoid foreclosure."  Id. § 2923.5(a)(2).  An

5   NOD may be filed when the authorized agent has not contacted the borrower, but only if

6   the failure to contact the borrower occurred "despite the due diligence of" the authorized

7   agent.  Id. § 2923.5(e).

8        PNC argues that this cause of action should be dismissed because there is no

9   authority for allowing a borrower to sue to avoid foreclosure when the servicer complies

10  with § 2923.5 by contacting the borrower, but then "makes an error" in the declaration by

11  stating that the contact was unsuccessful.  Moreover, PNC asserts, the FAC includes no

12  plausible allegation that the declaration was false.

13       The motion is GRANTED.  The dismissal is with leave to amend to allege facts

14  showing specifically how PNC failed to comply with the requirements of § 2923.5 prior to

15  recording the August 9, 2013 NOD.  In addition, however, the court notes that the only

16  relief available under § 2923.5 is a postponement of the foreclosure sale until the servicer

17  complies with the due diligence requirements.  See Mabry v. Superior Court, 185 Cal .App.

18  4th 208, 214 (2010); see also Cal. Civ. Code § 2924.19.  It appears from the allegations in

19  the FAC that the date previously set for the foreclosure sale was postponed, and that the

20  date to which it was postponed has expired.  There is no indication that a new date has

21  been noticed.  Thus, it is not clear what remedy plaintiff can pursue at this stage of the

22  litigation.

23              b.     Second cause of action (HBOR violations)

24       In the second cause of action, plaintiff alleges that PNC violated several provisions

25  of the HBOR[1] – California Civil Code §§ 2923.7, 2923.55, 2924.10, and 2923.6 and/or

26  _____

27       [1]  The HBOR, which took effect January 1, 2013, reformed aspects of the California's
     nonjudicial foreclosure process by amending the California Civil Code to prohibit deceptive and
28  abusive home foreclosure practices.  See Morris v. Residential Credit Solutions, Inc., 2015 WL
     428114 *10 & n.6 (E.D. Cal. Feb. 2, 2015).

1   2924.11.  PNC argues that the FAC fails to state a claim under each of these statutes, and

2   in particular, that the FAC fails to allege any "material" violation, which is a requirement for

3   seeking injunctive relief for violations of §§ 2923.55, 2923.6, 2923.7, or 2924.10.  See Cal.

4   Civ. Code § 2924.12.  The court finds that materiality raises issues of fact that cannot in the

5   present case be determined on a Rule 12(b)(6) motion.

6       Accordingly, in this order, the court simply decides whether the FAC pleads facts

7   sufficient to state a plausible claim for violation of any of these statutes.  The court finds

8   that PNC's motion to dismiss the HBOR claims must be GRANTED.  The dismissal of the

9   claims under § 2923.7, 2924.10, and 2923.6 is with leave to amend. The dismissal of the

10  claim under § 2923.55(e) is with prejudice.

11      In his first HBOR claim, plaintiff asserts that PNC violated § 2923.7 by "failing to

12  provide a single point of contact to assist [p]laintiff after he specifically requested an

13  alternative to foreclosure."  FAC ¶ 87(a).  The court finds that this claim must be dismissed.

14  While the statute is somewhat ambiguous, it appears that the requirement to establish a

15  single point of contact (or "SPOC") is triggered only "[u]pon request from a borrower . . . "

16  Cal. Civ. Code § 2923.7(a).  Here, the FAC does not allege that plaintiff ever requested a

17  SPOC.

18      More importantly, plaintiff asserts that PNC failed to provide a SPOC, as evidenced

19  by the fact that Mrs. Garcia never spoke to the same person twice, and that each time she

20  called she spoke to a different person who was not able to explain plaintiff's "status" or why

21  his applications had been closed.  The allegation that a number of different individuals at

22  PNC responded to Mrs. Garcia's requests for information is not sufficient in itself to state a

23  claim.  The statute provides that once requested, the SPOC may be an individual or an

24  entire "team of personnel."  Cal. Civ. Code § 2923.7(e).

25      In addition, it is not clear exactly what information plaintiff claims PNC failed to

26  provide via the SPOC.  The statute lists five responsibilities of the SPOC.  See id.

27  § 2923.7(b)(1)-5).  However, while the FAC alleges generally that no one Mrs. Garcia

28  talked to could advise her of the "status" of plaintiff's loan modification applications, the

8

United States District Court
For the Northern District of California

1  FAC does not allege facts sufficient to show that the individuals Mrs. Garcia communicated

2  with at PNC failed to comply with the enumerated statutory responsibilities.  In addition, to

3  the extent that he alleges that those individuals failed to adequately inform him "of the

4  current status of the foreclosure prevention alternative," id. § 2923.7(b)(3), he must allege

5  facts (instead of mere conclusions) in support of that claim.

6  The dismissal is with leave to amend to allege facts showing that plaintiff requested

7  a SPOC (if he did), that PNC failed to provide a SPOC,[2] that the individuals to whom Mrs.

8  Garcia spoke at PNC were not part of a "team of personnel," and that they failed to comply

9  with specific responsibilities enumerated in § 2923.7(b)(1)-(5).

10  In his second HBOR claim, plaintiff alleges that PNC violated § 2923.55(e) by

11  "encouraging" plaintiff to put off seeking legal representation "by misstating that [p]laintiff

12  'still had time,' thus interfering with [p]laintiff's right to be represented by an attorney" in any

13  discussion with the servicer regarding his financial situation and options to avoid

14  foreclosure.  FAC ¶ 87(b).  The court finds that this claim must be dismissed.

15  Under § 2923.55(e), a borrower may designate "a HUD-certified housing counseling

16  agency, attorney, or other adviser to discuss with the mortgage servicer, on the borrower's

17  behalf, the borrower's financial situation and options for the borrower to avoid foreclosure."

18  Cal. Civ. Code § 2923.55(e).  While this provision allows the borrower to designate an

19  attorney to have discussions with the mortgage servicer, it does not include a requirement

20  that the servicer advise the borrower of this right or that the servicer avoid "interfering" with

21  that right.

22  Moreover, the allegations in the FAC do not show that plaintiff attempted to

23  designate an attorney, or requested that he be allowed to do so.  Plaintiff alleges only that

24  Mrs. Garcia asked if plaintiff needed an attorney, and that "Chris" responded that no

26  [2]  The Declaration of Susie Garcia filed with plaintiff's motion for preliminary injunction
27  indicates that PNC did provide an SPOC.  See S. Garcia Decl. ¶ 10 (stating that she had
talked to a different person each time and that "the person who had been assigned as our
28  single point of contact had never been available").

9

1  foreclosure sale had been set, so her husband "still had time."  As pled, these were true

2  statements by "Chris," and did not constitute any violation of PNC's obligations under

3  § 2923.55.  Certainly there is no allegation that plaintiff attempted to designate an attorney,

4  but such designation was not accepted by PNC.  The dismissal of this claim is with

5  prejudice.

6       In his third HBOR claim, plaintiff asserts that PNC violated § 2924.10 by "failing to

7  provide written acknowledgment of receipt of [p]laintiff's third application and documents

8  sent on October 5, 2013 within 5 business days, and [p]laintiff's fourth application and

9  documents sent on March 7, 2014, within 5 business days."  FAC ¶ 87(c).  The court finds

10  that this claim must be dismissed.

11       Under 2924.10, when a borrower submits a "<u>complete</u> first lien modification," the

12  mortgage servicer is required to provide written acknowledgment of the receipt of the

13  documentation within five business days of receipt.  Cal. Civ. Code § 2924.10(a) (emphasis

14  added).  A borrower's first lien loan application is deemed "complete" when the borrower

15  "has supplied the mortgage servicer with all the documents required by the mortgage

16  servicer withihn the reasonable timeframes specified by the mortgage servicer."  <u>Id.</u> ¶

17  2924.10(b).

18       Here, as with the following claim, the court finds that the FAC does not include

19  factual allegations sufficient to state a plausible claim that by the time any of the foreclosure

20  notices were recorded, plaintiff had completed his application by providing the documents

21  PNC had requested and within the timeframes PNC had specified.  At a minimum, in any

22  amended complaint, plaintiff must allege facts showing what documents or information

23  PNC requested in connection with the third and fourth applications, when PNC requested

24  those documents or that information, what deadlines PNC imposed (if any), and when

25  plaintiff in fact provided the requested documents and information.

26       In his fourth HBOR claim, plaintiff asserts that PNC improperly engaged in "dual

27  tracking" by "conducting a non-judicial foreclosure sale, including scheduling a foreclosure

28  sale date and/or postponing a foreclosure sale date, while [p]laintiff's application is still in

10

United States District Court

For the Northern District of California

1  review. FAC ¶ 87(f); see also FAC ¶¶ 87(d), (e).  In the FAC, plaintiff pleads this claim as a

2  violation of Civil Code § 2924.11.  Id.  In her opposition to the motion to dismiss, she states

3  that her § 2924.11 claim "is in fact based on Cal. Civ. Code § 2923.6" and that she

4  "inadvertently referenced a version of Cal. Civ. Code § 2924.11 which will not go into effect

5  until 2018."  Pltf's Opp. at 8 n.1.  The court finds that this claim must be dismissed.

6      Under Civil Code § 2913.6, "[i]f a borrower submits a complete application for a first

7  lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage

8  servicer, trustee, beneficiary, or authorized agent shall not record a notice of default or

9  notice of sale, or conduct a trustee's sale, while the complete first lien loan modification is

10 pending.  Cal. Civ. Code § 2923.6(c) (emphasis added).  Before recording an NOD or

11 notice of sale, the servicer, trustee, beneficiary, or authorized agent must make a written

12 determination that the borrower is not eligible for a first lien loan modification, and must

13 allow the statutory time for written notification and appeal to elapse.  Id. § 2923.6(d)-(f).

14 As with § 2924.10, "complete" under this statute means "a borrower has supplied the

15 mortgage servicer with all documents required by the mortgage servicer within the

16 reasonable timeframes specified by the mortgage servicer."  Id. § 2923.6(h).

17     The requirements and prohibitions of § 2923.6(c) are triggered by the borrower's

18 submission of a "complete" loan modification application.  Here, while plaintiff alleges in a

19 conclusory fashion that his first, second, third, and fourth loan modification applications

20 were all "complete," FAC ¶¶ 42, 45, 54, 59, he alleges no facts from which it can be

21 determined whether, as to each application, plaintiff supplied PNC with all documents

22 required by PNC within the reasonable timeframes specified."  See id. § 2923.6(h).  Nor are

23 there allegations showing that a complete application was in fact pending at the time of the

24 notices of default, the notice of trustee's sale, or while the trustee's sale approached.     As

25 discussed above with regard to the claim under § 2924.10, any amended complaint must

26 allege facts showing that plaintiff in fact submitted a "complete" loan modification

27 application.  While the court cannot make a determination on a motion to dismiss that an

28 application was or was not complete, that does not relieve plaintiff from the obligation to

United States District Court

For the Northern District of California

1  plead facts sufficient to state a plausible claim that he submitted a complete application,

2  and that PNC nonetheless recorded an NOD and notice of trustee's sale.

3                    c.    Third cause of action (RESPA)

4          In the third cause of action, plaintiff asserts that PNC violated 12 U.S.C. § 2605(e),

5  which relates to the duty of the loan servicer to respond to borrower inquiries.  Plaintiff

6  alleges that she sent PNC a QWR on April 29, 2014; that PNC did not provide all the

7  documents and information requested in the QWR; and that PNC provided information to

8  consumer reporting agencies regarding overdue payments owed by plaintiff, which plaintiff

9  claims were "related to his QWR," and many of which "were neither late nor overdue."  FAC

10 ¶¶ 94-95.

11         PNC argues that the FAC fails to allege facts sufficient to state a claim under

12 § 2605(e).  The court finds that the motion must be GRANTED.  The dismissal is with leave

13 to amend to allege facts supporting the claim.  Specifically, plaintiff must allege which

14 provisions of § 2605(e) were violated, and must plead facts sufficient to support those

15 allegations – in particular, he must allege facts showing that the information he requested in

16 the QWR was "information relating to the servicing of [his] loan."  Id. § 2605(e)(1)(A).  In

17 addition, plaintiff must allege what information was given to any consumer reporting

18 agency, when it was given, or whether such information related to any "overdue payment."

19         Finally, plaintiff must allege facts showing that he was damaged by the alleged

20 violations.  RESPA authorizes "actual damages to the borrower" as a result of a failure to

21 comply with RESPA requirements."  12 U.S.C. § 2605(f)(1)(A).  However, alleging a breach

22 of RESPA duties alone does not state a claim under RESPA.  Plaintiffs must, at a

23 minimum, also allege that the breach resulted in actual, pecuniary damages.  Smiley v. JP

24 Morgan Chase, 2015 WL 217258 at *3 (N.D. Cal. Jan. 15, 2015); Swanson v. EMC Mortg.

25 Corp., 2009 WL 3627925 at *7 (E.D. Cal. Oct. 29, 2009); see also Velasco v. Homewide

26 Lending Corp., 2013 WL 3188854 at *2 (C.D. Cal. June 21, 2013); Ramanujam v. Reunion

27 Mortg., Inc., 2011 WL 446047 at *5 (N.D. Cal. Feb. 3, 2011).

28         Here, plaintiff alleges only that he "has suffered actual damages, including but not

United States District Court
For the Northern District of California

1   limited to devastation of his credit, monetary damages, and threatened foreclosure of their

2   [sic] home."  FAC ¶ 96.  Not only is this allegation vague and conclusory, but there is no

3   indication as to any connection between the alleged RESPA violation(s) and any actual

4   damages sustained by plaintiff.

5                   d.      Fourth cause of action (§ 17200)

6           In the fourth cause of action, plaintiff alleges that PNC violated § 17200 by violating

7   RESPA and various sections of the Civil Code ("unlawful" business practices); and by

8   failing to perform loan servicing functions consistent with its responsibilities to plaintiff under

9   HAMP, failing to properly supervise its employees and representatives, failing to

10  permanently modify loans and/or provide alternatives to foreclosure, and engaging in acts

11  and practices that prolong the HAMP process ("unfair" business practices).  FAC ¶¶ 103-

12  107.  There are no clear allegations of "fraudulent" business practices.

13          PNC argues that the § 17200 cause of action fails to state a claim because plaintiff

14  has not stated a claim as to the underlying statutes.  In addition, PNC asserts, plaintiff

15  cannot show standing under § 17200 because he has not alleged a loss or deprivation of

16  money or property (economic injury) that was caused by the alleged unfair business

17  practice(s).

18          The motion is GRANTED.  First , because the § 17200 claim is derivative of the

19  other causes of action asserted, the FAC fails to state a claim for violation of § 17200

20  because plaintiff has failed to state a claim under those other causes of action.  In addition,

21  the FAC fails to allege standing, because plaintiff has not pled facts showing he suffered

22  injury resulting from PNC's non-judicial foreclosure activities (as opposed to injury resulting

23  from his own default).

24          Plaintiff defaulted on the loan in September 2011.  The allegations in the FAC make

25  clear that he was in default under the loan prior to the time period of PNC's alleged

26  conduct, and that he remains in default today.  Where a borrower claims a violation of the

27  UCL in connection with non-judicial foreclosure activity, there is no standing to sue for

28  alleged conduct that occurred after the plaintiff's default under the loan, because the

United States District Court

For the Northern District of California

1   borrower cannot satisfy the causation component of the standing requirement.  See

2   Jenkins v. JP Morgan Chase Bank, N.A., 216 Cal. App. 4th 497, 521-23 (2013).  Thus,

3   because the court finds that amendment would be futile, the dismissal of the § 17200 claim

4   is with prejudice.

5               e.      Fifth cause of action (quiet title)

6       In the fifth cause of action, plaintiff claims that there is "confusion over who exactly

7   owns his loan," and seeks to quiet title "to ascertain who exactly owns his loan, and their

8   precise interest therein, to the subject property, subject to the valid existent encumbrances

9   that are on the property."  FAC ¶¶ 114-115.  PNC argues that this claim must be dismissed

10  because the FAC does not allege facts sufficient to support the elements of the claim.  The

11  court finds that the motion must be GRANTED.

12      "A quiet title action must include: (1) a description of the property in question; (2) the

13  basis for plaintiff's title; and (3) the adverse claims to plaintiff's title."  Kelley v. Mortgage

14  Elec. Registration Sys., Inc., 642 F.Supp. 2d 1048, 1057 (N.D. Cal. 2009).  Thus, to state a

15  quiet title cause of action, a plaintiff must allege facts showing, among other things, that the

16  defendant has an adverse claim to the property.  See Cal. Civ. P. Code § 761.020.

17  Plaintiff's allegations show that PNC is the servicer of plaintiff's loan, which is secured by a

18  deed of trust, which plaintiff admits encumbers his property.  The allegation that there is

19  "confusion over who exactly owns his loan" does not show an adverse claim to the title to

20  the property.  Thus, this claim must be dismissed.

21      The fact that PNC has the authority to proceed with foreclosure under the Deed of

22  Trust does not mean that there is some "confusion" over who owns title to the property.

23  Regardless of who owns the loan, the impact on plaintiff's title to the property is the same –

24  the property is encumbered by a deed of trust securing the obligation with a power of sale.

25  In addition, because plaintiff admits that PNC is the servicer, there is no question that PNC

26  is the agent of the beneficiary, and is therefore entitled to foreclose.  See Cal. Civ. Code

27  § 2924 (agent of beneficiary may proceed with non-judicial foreclosure).

28      The court will grant leave to amend, but only to the extent that plaintiff can allege

United States District Court
For the Northern District of California

1  facts showing that PNC has an adverse claim to the title to the property.

2              f.    Sixth cause of action (negligence)

3       In the sixth cause of action, plaintiff asserts a claim of negligence.  The elements of

4  a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of

5  that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury.

6  Mendoza v. City of L.A., 66 Cal. App. 4th 1333, 1339 (1998).  "The threshold element of a

7  cause of action for negligence is the existence of a duty to use due care."  Paz v. State of

8  Cal., 22 Cal. 4th 550, 559 (2000) (citing Bily v. Young & Co., 3 Cal. 4th 370, 397 (1992)).

9  Whether a duty of care exists is a question of law.  Avila v. Citrus Cmty. College Dist., 38

10  Cal. 4th 148, 161 (2006).

11      PNC argues that this claims should be dismissed because financial institutions such

12  as lenders and mortgage servicers generally owe no common law duty of care to borrowers

13  such as the plaintiff here, and because plaintiff has failed to allege facts showing that PNC

14  owed him a duty of care or that he suffered damages because of PNC's alleged

15  negligence.

16      In the FAC, plaintiff concedes that "[a]s a general rule, a financial institution owes no

17  duty of care to a borrower when the institution's involvement in the loan transaction does

18  not exceed the scope of its conventional role a mere lender of money."  FAC ¶ 118.  This is

19  the rule as stated by numerous courts, including the California Court of Appeal in Nymark v.

20  Heart Fed. Sav. & Loan Assn., 231 Cal. App. 3d 1089, 1096 (1991).

21      Plaintiff alleges that in August 2012, PNC agreed to perform certain loan

22  modification and foreclosure prevention services for plaintiff's loan, thus going beyond its

23  role as a "silent lender and loan servicer."  FAC ¶ 118.  He asserts that PNC's duty

24  consisted of "having appropriate staff capable of competently handling the loan

25  modification application, ensuring documents are properly collected, processed, and

26  reviewed, and ensuring that the [p]laintiff's loan modification application and accompanying

27  documents are filed in the proper fashion in [d]efendants' computer systems."  FAC ¶ 119.

28  He also asserts that the duty included the requirement that PNC "not make material

1  representations about the status of a loan modification application or about the day, time or

2  status of a foreclosure sale of the deadlines to submit an application." Id.

3      Under California law, a loan servicer does not owe a common law duty of care to

4  offer, consider, or approve a loan modification, or to explore or offer foreclosure

5  alternatives. See Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 67-68

6  (2013). "[A] loan modification is the renegotiation of loan terms, which falls squarely within

7  the scope of a lending institution's conventional role as a lender of money." Id. at 67. The

8  lender's obligations in connection with offering, considering, or approving loan

9  modifications, or exploring foreclosure alternatives are created solely by the loan

10  documents and various statutes, regulations, and directives from the legislature or

11  governmental agencies. Id.

12      The motion is GRANTED. Plaintiff has not adequately alleged the existence of a

13  duty of care and has not adequately alleged damages resulting from any breach of that

14  duty of care. Nor has he clearly alleged which actions by PNC constituted the alleged

15  breach. Many of the allegations – see, e.g., FAC ¶ 121 – are based on the same

16  allegations as the alleged HBOR violations, and it is difficult to tell exactly what actions

17  plaintiff believes constitutes the alleged negligence.

18      In addition, the FAC alleges no facts showing that, but for the alleged negligence,

19  plaintiff would have obtained a loan modification or otherwise have been able to avoid

20  foreclosure. Plaintiff alleges only that PNC's breach of duty "is a proximate cause of

21  [p]laintiff's injuries, which to date, had caused him to lose money, loss of equity in his home

22  as a result of additional late fees, penalties and interest added to his loan as a result of

23  [d]efendants' delay and failure to process his application, attorneys' fees and costs of suit,

24  plus other damages subject to proof at trial." FAC ¶ 122. All these claimed injuries are a

25  result of plaintiff's defaulting on his loan payments, not the product of any alleged delay on

26  PNC's part.

27      It is true that the Luceras court stated that "lender does owe a duty to a borrower to

28  not make material misrepresentations about the status of an application for a loan

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   modification or about the date, time, or status of a foreclosure sale," but the court found this

2   duty not to make material misrepresentations in Civil Code § 1710(2) ("deceit") – not as

3   part of any common law duty of care.  Id. at 68.

4        Moreover, there is no allegation in the FAC that PNC agreed to a loan modification,

5   or improperly denied plaintiff's application for a loan modification.  For the reasons stated

6   above in connection with the discussion of the HBOR claims, plaintiff has not adequately

7   alleged that he submitted any "complete" application for a loan modification.

8        The dismissal of this claim is with leave to amend, but only to the extent that plaintiff

9   can articulate which actions constituted the alleged negligence, and can properly plead the

10  existence of a common law duty, and damages resulting from PNC's breach of that duty.

11           g.      Seventh cause of action (declaratory relief)

12       In the seventh cause of action, plaintiff seeks a judicial declaration regarding the

13  parties' respective rights and duties.  PNC argues that this cause of action should be

14  dismissed because it is dependent on the theory that the pending foreclosure violated one

15  or more HBOR provisions, but plaintiff has failed to state a claim based on any allegations

16  of HBOR violations.

17       The motion is DENIED.  As PNC concedes, this claim is derivative of the other

18  causes of action alleged in the FAC.  As the dismissal is with leave to amend, at least in

19  part, the declaratory judgment claim remains in the case and can be realleged in any

20  amended complaint.

21  B.     Motion to Strike

22       1.      Legal Standard

23       Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken

24  from any pleading any insufficient defense or any redundant, immaterial, impertinent, or

25  scandalous matter."  Fed. R. Civ. P. 12(f).  The function of a 12(f) motion to strike is to

26  avoid the expenditure of time and money that must arise from litigating spurious issues by

27  dispensing with those issues prior to trial.  Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d

28  970, 973-74 (9th Cir. 2010).

United States District Court
For the Northern District of California

1    Motions to strike are not favored and "should not be granted unless it is clear that

2    the matter to be stricken could have no possible bearing on the subject matter of the

3    litigation." Colaprico v. Sun Microsystem, Inc., 758 F.Supp. 1335, 1339 (N.D. Cal. 1991).

4    When a court considers a motion to strike, it "must view the pleading in a light most

5    favorable to the pleading party." In re 2TheMart.com, Inc. Sec Lit., 114 F Supp. 2d 955,

6    965 (C.D. Cal. 2000).  A court must deny the motion to strike if there is any doubt that the

7    allegations in the pleadings might be relevant in the action.  Id.

8        2.    Defendant's Motion

9    PNC argues that if the court determines that plaintiff has stated a claim in the FAC,

10   the allegations in FAC ¶¶ 2, 14-30, and 34-35 should be stricken as immaterial and

11   impertinent.  These paragraphs include generalized allegations regarding HBOR and its

12   purposes; the "background" of the "mortgage crisis;" the mortgage industry; enforcement

13   actions by the Federal Reserve against certain mortgage loan servicers (including PNC);

14   the federal Home Affordable Modification Program ("HAMP") and related federal programs.

15   The motion is DENIED.  While the materiality of these allegations is questionable,

16   PNC has not established that if the allegations remain in the complaint, it will be prejudiced

17   and/or will be required to spend time and resources "litigating spurious issues."

18   C.    Motion for Preliminary Injunction

19       1.    Legal Standard

20   "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed

21   on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

22   that the balance of equities tips in his favor, and that an injunction is in the public interest."

23   Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). But if a plaintiff can only

24   show that there are "serious questions going to the merits," a preliminary injunction may still

25   issue if the "balance of hardships tips sharply in the plaintiff's favor," and the other two

26   Winter factors are satisfied.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-

27   35 (9th Cir. 2011); Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1085 (9th Cir. 2014).

28   "Preliminary injunction is as an extraordinary remedy that may only be awarded upon a

United States District Court

For the Northern District of California

1    clear showing that the plaintiff is entitled to such relief." <u>Winter</u>, 555 U.S. at 22.

2            2.    Plaintiff's Motion

3            In this motion, plaintiff seeks an order enjoining PNC "from transferring any

4    ownership interest in or further encumbering the property . . . pending trial in this action."

5    First, he argues that he is likely to prevail on the claim of dual tracking violations, on the

6    claim of single point of contact violations, and on the claims of "pre-Notice of Default

7    outreach" violations, for the reasons argued in his opposition to the motion to dismiss.  He

8    does not argue that he is likely to prevail on any claims other than § 2923.5 claim and the

9    HBOR claims.

10           Second, plaintiff contends that he will suffer irreparable harm if the foreclosure sale

11   proceeds, because he and his wife will lose their residence.  He asserts that this harm is

12   immediate and not speculative, even though there is currently no operative notice of

13   pending sale, as PNC planned to sell the property at a trustee's sale until plaintiff obtained

14   a TRO in state court (before the case was removed).

15           Third, plaintiff asserts that the balance of equities favors his position, as he will lose

16   his home forever if PNC is permitted to sell it at auction, while PNC will not suffer if the sale

17   is postponed until the issues in the case have been finally determined.

18           Fourth, plaintiff contends that a preliminary injunction in this case would serve the

19   public interest, as home foreclosures have an adverse effect on households and

20   communities, and because enjoining foreclosure sales will have public benefits in that

21   lenders will be forced to comply with foreclosure statutes.

22           The motion is DENIED.  Given the failure of the FAC to state a claim as to the

23   HBOR claims, the court finds that plaintiff has not established a likelihood of success on the

24   merits.  Nor has he established a likelihood of irreparable harm.  He argues that if PNC is

25   not prevented from proceeding with the foreclosure sale (which is not currently pending), he

26   will suffer irreparable harm because he will lose his residence.  However, the notices of

27   default were recorded because plaintiff defaulted on the loan more than three years ago –

28   not because of anything PNC did.

**United States District Court**
For the Northern District of California

**CONCLUSION**

In accordance with the foregoing, PNC's motion to dismiss is GRANTED, with leave to amend as to the claims under Civil Code § 2923.5, § 2923.7, § 2924.10, and 2923.6; the claim under RESPA; the quiet title claim; the negligence claim; and the claim for declaratory relief. The claim under Civil Code § 2923.55(e) and the § 17200 claim are dismissed with prejudice. The motion to strike is DENIED. Plaintiff's motion for preliminary injunction is DENIED.

Any amended complaint shall be filed no later than March 9, 2015. Plaintiff shall add no new claims or parties without agreement of PNC or leave of court.

**IT IS SO ORDERED.**

Dated: February 9, 2015

_____
PHYLLIS J. HAMILTON
United States District Judge